

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-07-410-CV

CITY OF FORT WORTH, TEXAS                                    APPELLANT

V.

LINDA J. SHILLING                                            APPELLEE

-----------

FROM THE 271ST DISTRICT COURT OF WISE COUNTY

-----------

## OPINION

-----------

### I. INTRODUCTION

Appellant City of Fort Worth, Texas (the "City") brings this accelerated, interlocutory appeal from the trial court's order denying its plea to the jurisdiction challenging Appellee Linda J. Shilling's claims under the Whistleblower Act and Texas Commission on Human Rights Act ("TCHRA"). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon 2008); TEX. GOV'T CODE ANN. §§ 554.001–.010 (Vernon 2004); TEX. LAB. CODE ANN. § 21.055

(Vernon 2006). In two issues, the City argues that the trial court erred by denying its plea to the jurisdiction because Shilling prematurely filed suit and because she is barred from pursuing one of her claims under both the TCHRA and Whistleblower Act. We will affirm in part and reverse and render in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The City hired Shilling in February 2006 to fill the position titled, "Deputy Director, IT Department." Sometime in October or November 2006, Shilling reported that the City's IT Finance Department was misappropriating and misusing funds in regard to certain City contracts. Shilling also reported sometime in November 2006 that Karen Montgomery, the City's assistant city manager, and Pete Anderson, Shilling's supervisor and department director, wanted to terminate Norm Craven, whom the City had recently hired, because Craven had participated in an investigation involving sexual harassment in years past. Also in November 2006, Shilling reported that Paula Randall, a City employee in the IT Department, had threatened Dan Allen, another employee in the IT Department, with the possible loss of his job if he was not in agreement that Shilling should be terminated.

The City terminated Shilling on December 5, 2006, in part due to insubordination and her failure to attend meetings and respond to information requests, according to the City. Two days later, Shilling mailed a letter dated

2

December 7, 2006, and addressed to Karen Marshall, the City's Human Resources Director, substantively stating as follows:

> My termination from the City of Fort Worth on December 5, 2006 was unfounded. The termination was due to me being a Whistle Blower by reporting mismanagement of funds. I would like to appeal my termination.

The subject of the letter is "Wrongful Termination," and it contains Shilling's signature, address, and telephone number.

Pete Nelson, a City employee responsible for handling investigations of whistleblowers, acknowledged in a letter addressed to Shilling and dated December 18, 2006, that "Karen Marshall gave me the memo you sent her dated December 7, 2006. In your memo you state you believe your termination of employment was due to the fact that you are a 'Whistle Blower.'" The letter continues, "I have enclosed a copy of the City's retaliation policy, as well as, a Retaliation Complaint form and instructions. Please complete the enclosed form and answer the ten (10) questions associated with the form." It concludes, "Please return the form to me[,] and I will begin investigating your allegation. Give me a call if you have any questions . . . ."

Shilling sent a letter to Nelson dated January 5, 2007, apologizing for "the delay in responding to [his] request for additional information." She submitted three completed City "Retaliation Complaint Forms" explaining the

3

basis of and circumstances surrounding her Whistleblower complaints that the IT Finance Department was misusing funds, that Montgomery and Anderson wanted to terminate Craven because Craven had participated in a sexual harassment investigation, and that Randall had threatened Allen.

On or about January 30, 2007, Shilling filed a charge of discrimination with the Texas Workforce Commission Civil Rights Division ("TWC") claiming that she was terminated shortly after she "reported and opposed efforts to terminate Norm Craven for participation in a sexual harassment investigation."

Shilling filed her original petition on February 23, 2007, alleging that the City had, pursuant to subchapter 554 of the government code, "subjected [her] to adverse employment action for good faith reports of violations of law to appropriate law enforcement agencies." In it, she contended that she had terminated her grievance proceeding with the City. Shilling's second amended original petition, her live petition, filed July 9, 2007, included an identical Whistleblower Act allegation in addition to an allegation asserting a retaliation claim under section 21.055 of the labor code.

The City subsequently filed a plea to the jurisdiction arguing that the trial court lacked jurisdiction (1) over Shilling's Whistleblower Act claims because she failed to comply with government code section 554.006 when she filed suit on February 23, 2007, less than sixty days after she had filed her grievances

4

with the City on January 5, 2007, and (2) over her TCHRA retaliation claim involving Craven because she had previously challenged the same complained-of conduct in her grievance proceeding with the City. *See* TEX. GOV'T CODE ANN. § 554.006(a), (d); TEX. LAB. CODE ANN. § 21.211. The City attached to its plea Nelson's affidavit, City policies regarding discrimination and retaliation complaints, portions of Shilling's deposition testimony, Shilling's three City-provided Retaliation Complaint Forms, and Shilling's TWC charge of discrimination. Shilling responded to the City's plea and attached twenty-six supporting exhibits, including the depositions of Shilling, Anderson, and Marshall, Shilling's post-termination correspondence with the City, and correspondence between City employees, among other items.

The trial court denied the City's plea to the jurisdiction. But it also ordered that Shilling's suit be abated for sixty days, during which time it ordered Shilling to elect whether she wants to proceed under the Whistleblower Act or the TCHRA on her retaliation claim involving "her objection to [the City's] alleged efforts to terminate the employment of Norm Craven." The trial court entered findings of fact and conclusions of law.[1] Of the trial court's eight

---

[1] *See IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997) (noting that when findings of fact are not required but are helpful, they do not carry the same weight on appeal as findings made under rule of civil procedure 296 and are not binding on the appellate court).

5

findings of fact, its second, fifth, sixth, and seventh findings of fact are as follows:

> 2. By letter dated December 7, 2006, Plaintiff initiated a grievance with Defendant in which same appealed her termination and alleged she was terminated for being a whistleblower.
>
> 5. In December 2006, Pete Nelson, Human Resources Manager for Defendant, started an investigation of Plaintiff's allegations raised in her December 7, 2006 letter.
>
> 6. After conducting his investigation, Ms. Marshall testified that Mr. Nelson reported to her that he could not substantiate Plaintiff's allegations.
>
> 7. Plaintiff filed suit on February 23, 2007, more than 61 days after Plaintiff initiated a grievance with Defendant.

### III. STANDARD OF REVIEW

We have jurisdiction to review a district court's interlocutory order that grants or denies a plea to the jurisdiction by a governmental unit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon 2008), § 101.001(3)(B) (Vernon 2005). A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to whether the claims asserted have merit. *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction. *Id*. Whether the trial court had subject matter jurisdiction is a question of law that we review de novo. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

6

The plaintiff has the burden of alleging facts that affirmatively establish the trial court's subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We construe the pleadings liberally in favor of the plaintiffs, look to the pleader's intent, and accept the pleadings' factual allegations as true. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). If a plea to the jurisdiction challenges the existence of jurisdictional facts, as in this case, we consider relevant evidence submitted by the parties that is necessary to resolve the jurisdictional issues. *Id*. at 227; *Bland ISD*, 34 S.W.3d at 555. A trial court's review of a plea to the jurisdiction challenging the existence of jurisdictional facts mirrors that of a traditional motion for summary judgment. *Miranda*, 133 S.W.3d at 228; *see also* TEX. R. CIV. P. 166a(c). The governmental unit is required to meet the summary judgment standard of proof for its assertion that the trial court lacks jurisdiction. *Miranda*, 133 S.W.3d at 228. The plaintiff is then required to show that there is a disputed material fact regarding the jurisdictional issue. *Id*. If the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea to the jurisdiction and leave its resolution to the fact finder. *Id*. at 227–28. But if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id*. at 228.

7

## IV. "INITIATE" ACTION

In its first issue, the City argues that the trial court erred by denying its plea to the jurisdiction because Shilling prematurely filed her lawsuit. It contends that she initiated the City's grievance procedure on January 5, 2007, when she returned to the City the three completed, City-provided retaliation complaint forms, not on December 7, 2006, when she notified Nelson that she wanted to appeal her termination. Consequently, the City contends that because Shilling filed her lawsuit on February 23, 2007, which was only forty-nine days after initiating the City's grievance procedure on January 5, she failed to comply with the Whistleblower Act's requirement that she give the City at least sixty days to reach a decision on her complaint before filing suit, thus depriving the trial court of jurisdiction over her claim. Shilling responds that she initiated the City's grievance procedure on December 7, 2006, and that she complied with the Whistleblower Act's mandatory sixty-day employer-investigation period because she filed her lawsuit seventy-eight days later.

The Whistleblower Act provides that a state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority. Tex. Gov't Code Ann.

8

§ 554.002(a). It contains an express waiver of the State's sovereign immunity. *See id*. § 554.0035 ("A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter."); *Tex. Dep't of Human Servs. v. Okoli*, No. 01-07-00103-CV, 2007 WL 1844897, at *2 (Tex. App.—Houston [1st Dist.] June 28, 2007, pet filed). Before filing suit, however, a claimant "*must initiate action* under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action." TEX. GOV'T CODE ANN. § 554.006(a) (emphasis added). If a final decision is not rendered before the sixty-first day after the date procedures are initiated, the employee may elect to exhaust the applicable procedures previously initiated or terminate procedures and timely file suit. *Id*. § 554.006(d)(1), (2). It is this sixty-day statutory requirement that the City contends Shilling failed to comply with.

The requirement that an employee "initiate" grievance procedures before filing suit is to afford the employer an opportunity to correct its errors by resolving disputes before litigation. *City of San Antonio v. Marin*, 19 S.W.3d 438, 441 (Tex. App.—San Antonio 2000), *disapproved of on other grounds by*

9

*Univ. of Tex. Med. Branch at Galveston v. Barrett*, 159 S.W.3d 631, 633 n.7 (Tex. 2005). Section 554.006 does not require that grievance or appeal procedures be exhausted before suit can be filed; rather, it requires that such procedures be timely initiated and that the grievance or appeal authority have sixty days to render a final decision. *Barrett*, 159 S.W.3d at 632. While the Whistleblower Act does not dictate what actions are required to "initiate" the appeals procedure, the Act is remedial in nature and should be liberally construed to effect its purpose. *Moore v. Univ. of Houston-Clear Lake*, 165 S.W.3d 97, 102 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *City of New Braunfels v. Allen*, 132 S.W.3d 157, 161 (Tex. App.—Austin 2004, no pet.).[2]

The evidence is undisputed that Shilling provided written notice of her intent to appeal her termination. The letter is dated December 7, 2006, and

---

[2] The City argues that section 554.006's statutory prerequisites to filing suit are jurisdictional because of the legislature's post-*Barrett* amendment to government code section 311.034 stating that "[s]tatutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." *See* TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp. 2008). Shilling contends that abatement, not dismissal, is the appropriate remedy for her alleged failure to comply with section 554.006. *See Barrett*, 159 S.W.3d at 632 (holding that abatement is appropriate remedy for prematurely filed Whistleblower Act suit, provided that procedures have been timely initiated, but stating that "[w]e need not decide here whether the failure to meet these requirements [of section 554.006] deprives the court of jurisdiction over the action."). In light of our holding overruling the City's first issue, we do not reach this specific question.

Shilling opines therein that her termination was "unfounded" and that she was terminated for being a whistleblower. The evidence is also undisputed that the City received Shilling's notice sometime shortly thereafter; Nelson responded to Shilling's notice by letter to her dated December 18, 2006, that Marshall had given him the memo that Shilling sent dated December 7, 2006.

The City's sole, specific argument is that Shilling did not initiate the City's grievance procedure because her December 7, 2006 letter failed to include the "very specific requirements" that are set forth in the City's discrimination and retaliation complaints policy. The policy states that an employee invokes the grievance procedure by filing a retaliation or discrimination report not later than the ninetieth day after the date on which the alleged adverse employment action occurred or was discovered and that all complaints must be filed in writing. The policy states that all reports "must include the following information," which includes employee contact information, including the employee's "number and position" and supervisor, the nature and date of the alleged adverse employment action, the individual who allegedly caused the adverse action, and the facts forming the basis of the complaint. The policy further provides that the "Human Resources Department's Employee Relations Division will investigate allegations of discrimination and retaliation and convey the findings to the Department Director."

11

While Shilling's December 7, 2006 letter does not contain the detail that is provided in her January 5, 2007 retaliation forms, we cannot conclude that the City established its plea to the jurisdiction on the issue of initiation as a matter of law because Shilling responded with evidence demonstrating that the City indeed began an investigation after receiving Shilling's written notice indicating her intent to appeal her termination. Specifically, Marshall testified at her deposition that she asked Nelson to conduct an investigation into Shilling's claims in December 2006 and that Nelson conducted an investigation. According to Marshall, Nelson shared his findings with her that he could not substantiate Shilling's claims. Also, Anderson sent Nelson a January 12, 2007 memorandum explaining that he was providing Nelson with two "documents" that he had mentioned to Nelson "a month or so ago" related to Shilling's whistleblower claims. Anderson confirmed during his deposition that the memorandum referenced a conversation that he had with Nelson in December 2006 when Nelson "was trying to investigate" Shilling's claims. Anderson testified that the memorandum states that he "talked to Pete Nelson about an investigation *he was conducting around that time frame*." [Emphasis added.] In the context of discussing the January 12, 2007 memorandum and December 2006 conversation that Anderson had with Nelson, Shilling's attorney

12

specifically inquired into whether Nelson conducted the investigation as a result of receiving Shilling's notice. The following exchange occurred:

> [Shilling's attorney]: And [Nelson] was conducting the investigation because he had received a complaint from Ms. Shilling that she had complained that she was terminated due to whistleblower activity, correct?
>
> [Anderson]: I — I believe that's the case, yes.

Shilling thus presented evidence disputing the City's argument that her December 7, 2006 letter did not "initiate" an investigation.[3]

The City cites a number of cases that are either distinguishable from the facts of this case or inapposite.[4] And although the City—in response to Shilling's exhaustion argument—contends in reply that Shilling presented no evidence that it made a decision on her appeal before she filed suit, we agree with our sister court's logical conclusion that an employee's act of filing suit demonstrates an intent to terminate the grievance proceedings and pursue the

---

[3] There is no evidence—nor is it argued—that the City initiated the investigation into Shilling's claims on its own or for any reason other than Shilling's letter notifying it of her intent to appeal her termination.

[4] *See Johnson v. The City of Dublin*, 46 S.W.3d 401, 404–05 (Tex. App.—Eastland 2001, pet. denied) (holding that appellant failed to initiate city's grievance procedure because he did not submit written copy of grievance); *Ruiz v. Austin ISD*, No. 03-02-00798-CV, 2004 WL 1171666, at *7 (Tex. App.—Austin May 27, 2004, no pet.) (mem. op.) (holding that appellant failed to initiate grievance procedure by raising concerns at a meeting).

13

claims in court. *See Tex. Dep't of Transp. v. Needham*, No. 03-98-00460-CV, 1999 WL 143853, at *3 (Tex. App.—Austin Mar. 18, 1999, no pet.) (not designated for publication) (addressing issue of whether an employee's filing of suit acts as an election under section 554.006(d) and holding that appellee's "filing of suit acted as an implied termination of . . . grievance procedures and was thus a tacit 'election' under the statute."). Indeed, Shilling alleged in her original petition that she was terminating the grievance.

With the exception of claiming in its reply brief that Marshall's deposition testimony is "not material,"[5] the City seems to disregard the evidence above demonstrating that it actually began an investigation in response to Shilling's December 2006 letter. Dismissing this evidence, however, is inconsistent not only with the liberal construction that we should give this portion of the Whistleblower Act (to effect its purpose that the employer be afforded an opportunity to correct its errors by resolving disputes before litigation), but also with the applicable standard of review. *See Miranda*, 133 S.W.3d at 228 (reasoning that trial court's review of plea to the jurisdiction challenging the

---

[5] The record does not demonstrate that the City asserted this objection to Marshall's testimony and obtained a ruling by the trial court thereon. *See* TEX. R. APP. P. 33.1.

14

existence of jurisdictional facts mirrors that of a traditional motion for summary judgment).

In light of the relevant jurisdictional evidence submitted by Shilling showing that her December 7, 2006 letter initiated an investigation by the City, a fact issue exists regarding the date on which she "initiated" the City's grievance procedure as contemplated by government code section 554.006(a). *See* TEX. GOV'T CODE ANN. § 554.006(a). Consequently, the trial court did not err by denying the City's plea to the jurisdiction on this ground. *See Miranda*, 133 S.W.3d at 227–28 (reasoning that the trial court must deny the plea to the jurisdiction and leave its resolution to the fact finder if the evidence creates a fact question regarding jurisdiction); *City of Dallas v. Watts*, 248 S.W.3d 918, 921–22 (Tex. App.—Dallas 2008, no pet.) (reasoning that appellant's arguments do not establish its plea to the jurisdiction as a matter of law but highlight fact dispute as to whether appellee's actions "initiated" appellant's appeal procedures). We overrule the City's first issue.

## V. ELECTION OF REMEDIES

In its second issue, the City argues that the trial court erred by failing to grant its plea to the jurisdiction on Shilling's TCHRA claim involving her report that Montgomery and Anderson wanted to terminate Craven because of his participation in a sexual harassment investigation. Relying on labor code

section 21.211, it contends that her TCHRA retaliation claim is barred because she elected to pursue a claim based on the same facts under the Whistleblower Act. Citing the supreme court's recent decision in *City of Waco v. Lopez*, the City additionally argues in a post-submission brief that Shilling's claim involving Craven is not actionable under the Whistleblower Act.[6] No. 06-0089, 2008 WL 2702182 (Tex. July 11, 2008).

Section 21.211 of the labor code provides that "[a] person who has initiated an action in a court of competent jurisdiction or who has an action pending before an administrative agency under other law . . . based on an act that would be an unlawful employment practice under this chapter may not file a complaint under this subchapter for the *same grievance*." TEX. LAB. CODE ANN. § 21.211. Although in the context of considering whether the TCHRA preempted a common law cause of action, this court considered section 21.211 in *Jackson v. Creditwatch, Inc*. 84 S.W.3d 397, 402–03 (Tex. App.—Fort Worth 2002), *rev'd in part on other grounds*, 157 S.W.3d 814 (Tex. 2005). There we reasoned in part as follows:

> Rather than preclude other causes of action that might arise from an employment practice made unlawful by the TCHRA, this language implies that a plaintiff cannot have two bites at the apple.

---

[6] Subject-matter jurisdiction cannot be waived and can be raised at any time. *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008).

16

> That is, a plaintiff cannot first sue a defendant-employer for a non-TCHRA cause of action for conduct arising from the same facts as employment discrimination and then pursue a claim of employment discrimination through the administrative review system established under the TCHRA; or, a plaintiff cannot elect to pursue an administrative remedy under some other administrative review system, and then file with the TCHR[A administrative review system] as well. This provision requires a plaintiff to pick a remedy . . . .

*Id*. (quoting *Perez v. Living Ctrs.–Devcon, Inc.*, 963 S.W.2d 870, 873–74 (Tex. App.—San Antonio 1998, pet. denied)). This interpretation, which other courts have adopted as well, is consistent with the supreme court's interpretation of section 21.211 in *Lopez*. *See Lopez*, 2008 WL 2702182, at *6 ("The election of remedies language simply means that a claimant can pursue a remedy for discrimination under federal law or under grievance-redress systems in existence at the local level, but pursuing either of these options precludes later initiating a [T]CHRA complaint."); *Turner v. Richardson ISD*, 885 S.W.2d 553, 561 (Tex. App.—Dallas 1994, writ denied) (considering argument that appellants could have timely filed Whistleblower Act claims, pursued TCHRA administrative remedies until permission to sue was granted, and then amended suit to add TCHRA claim and reasoning that, under section 21.211, appellants "were expressly prevented from maintaining both actions simultaneously"); *Stancu v. Cent. Apartment Mgmt., Inc.*, No. 394-CV-2440-D, 1997 WL 278127, at *2 (N.D. Tex. May 14, 1997) (mem. op.) ("[Section] 21.211

17

merely provides that if a person has already initiated a lawsuit or other proceeding permitted by law, order, or ordinance, he may not file a complaint with the Commission on Human Rights for the same practice. It is in this sense alone that he elects his remedy."); *see also Williams v. Vought*, 68 S.W.3d 102, 111 n.9 (Tex. App.—Dallas 2001, no pet.).

Here, Shilling sought review of her Whistleblower Act claims through the City's local grievance procedure. The facts underlying the basis of one of her City-provided retaliation complaint forms is that she "reported that [Montgomery] and [Anderson] wanted to terminate [Craven] because he had participated in a sexual harassment investigation previously." Shilling also filed a charge of discrimination with the TWC on or about January 30, 2007. The basis of her charge of discrimination complaint is that the City terminated her after she "reported and opposed efforts to terminate Norm Craven for participation in a sexual harassment investigation." Shilling thus began administrative proceedings with the City based in part on her claim regarding Craven and also filed a charge of discrimination with the TWC based on the same (indeed identical) complained-of conduct involving Craven. This she cannot do. Having initiated administrative proceedings with the City regarding conduct involving Craven, Shilling was unambiguously prohibited by labor code section 21.211 from contemporaneously pursuing her complaint with the TWC

18

based on the same grievance involving Craven. *See* TEX. LAB. CODE ANN. § 21.211.

Shilling argues that the City must first demonstrate that her termination in retaliation for objecting to the City's alleged efforts to terminate Craven would be an unlawful employment practice under the labor code. But we will not adopt a construction of section 21.211 that will render it meaningless or lead to absurd results. *See Watts v. City of Houston*, 126 S.W.3d 97, 100 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Shilling's interpretation of section 21.211 would render it virtually meaningless because the City may perpetually contest any finding that it engaged in an unlawful employment practice.

We hold that the trial court erred by denying the City's plea to the jurisdiction on this ground. Accordingly, we sustain this part of the City's second issue.

We now turn to the City's post-submission argument relying on *Lopez* that Shilling's claim involving Craven is not actionable under the Whistleblower Act. Lopez sued the City of Waco under the Whistleblower Act, claiming that his employment with the city was terminated for filing a grievance with the city's equal employment opportunity officer. *Lopez*, 2008 WL 2702182, at *1. He had complained that he was transferred from one position to another

because of his age and race in violation of the City of Waco's EEO policy. *Id*. The city filed a plea to the jurisdiction challenging Lopez's Whistleblower Act claim, arguing in part that the TCHRA was the exclusive remedy for Lopez's retaliatory discharge claim. *Id*. The supreme court agreed and held that the TCHRA provides the exclusive state statutory remedy for public employees alleging retaliation arising from activities protected under the TCHRA. *Id*. at *1, 7. The court limited its holding "to retaliatory discharge claims premised on the type of harm the [T]CHRA was enacted to redress." *Id*. at *7. Consequently, "the Whistleblower Act must yield to the [T]CHRA for retaliation claims arising from allegations of employment discrimination made unlawful under the [T]CHRA." *Id*. at *6.[7]

Here, Shilling sued the City under the Whistleblower Act. As we mentioned above, the facts underlying the basis of one of her City-provided retaliation complaint forms is that she "reported that [Montgomery] and

---

[7] Texas Supreme Court decisions generally apply retroactively unless the supreme court exercises its discretion to modify that application and expresses so in its opinion. *Elbaor v. Smith*, 845 S.W.2d 240, 250 (Tex. 1992); *Bowen v. Aetna Cas. & Sur. Co.*, 837 S.W.2d 99, 100 (Tex. 1992). The court's opinion in *Lopez* does not indicate that it is to be applied prospectively, nor are we convinced that an exception to this rule is appropriate under the circumstances. *See Elbaor*, 845 S.W.2d at 250 (considering three factors used to determine whether decision should be applied prospectively or retroactively).

[Anderson] wanted to terminate [Craven] because he had participated in a sexual harassment investigation previously." The basis of her charge of discrimination complaint filed with the TWC is that the City terminated her after she "reported and opposed efforts to terminate Norm Craven for participation in a sexual harassment investigation." Shilling's claim that the City terminated her in retaliation for reporting and opposing the City's desire to terminate Craven for his participation in a sexual harassment investigation is thus premised on the type of harm that the TCHRA was enacted to address. Because the TCHRA provides the exclusive state statutory remedy for retaliation claims arising from activities protected under the TCHRA, the trial court does not have jurisdiction over Shilling's Whistleblower Act claim involving Craven.[8] *See id*. at *7. Accordingly, we sustain this part of the City's second issue.

## VI. CONCLUSION

Having overruled the City's first issue, we affirm the trial court's order denying the City's plea to the jurisdiction as to Shilling's Whistleblower Act claims that are not premised on Shilling's report involving Craven. However,

---

[8] Aside from its first issue, which we have overruled, the City does not challenge the other allegations that Shilling alleges constitute Whistleblower Act violations.

having sustained the City's second issue challenging Shilling's TCHRA retaliation claim involving Craven, we reverse the trial court's order abating Shilling's action and ordering her "to ELECT to proceed under the Texas Whistleblower Act o[r] the Texas Commission on Human Rights Act on her claim that her employment was terminated in retaliation for her objection to Defendant's alleged efforts to terminate the employment of Norm Craven, such election to be made on or before seven days after the expiration of the abatement period[,]" and render judgment dismissing her TCHRA retaliation claim for want of jurisdiction. *See* TEX. R. APP. P. 43.2(c). Having additionally sustained the part of the City's second issue challenging Shilling's Whistleblower Act claim involving Craven, we render judgment dismissing that claim for want of jurisdiction. *See id*.[9]

                                        DIXON W. HOLMAN
                                        JUSTICE

PANEL: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

DELIVERED: August 21, 2008

---

[9] To avoid any confusion by the parties, Shilling's Whistleblower Act claims not premised on Shilling's report involving Craven remain pending in the trial court.